# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| **EDWARD WALDO** | ) | |
| **OWENS, JR.,** | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:20-cv-01149-CLM** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
|     **Defendant.** | ) | |

## MEMORANDUM OPINION

Edward Waldo Owens, Jr. seeks disability and disability insurance benefits from the Social Security Administration ("SSA") based on several impairments. The SSA denied Owens' application in an opinion written by an Administrative Law Judge ("ALJ"). Owens argues: (1) that the ALJ erred by not evaluating opinion evidence from Dr. James White; (2) that the ALJ erred by not considering a functional capacity assessment from Rehab Partners Physical Therapy of Anniston, LLC; and (3) that the ALJ failed to adequately develop the record.

As detailed below, the ALJ erred by not evaluating the functional capacity assessment, which contained recommendations that Owens' treating physician wrote that she agreed with. So the court will **REVERSE** the Commissioner's denial of benefits and **REMAND** this case to the Commissioner.

## I.     Statement of the Case

### A.     Owens' Disability, as told to the ALJ

Owens was 54 years old on his alleged disability onset date and 60 years old on the day he was last insured. R. 21, 140. Owens completed two years of college and has past relevant work as a commander and equipment repairer. R. 29–30, 53–55, 152. In his disability report, Owens alleged that he suffered from high blood pressure, cerebral palsy, hearing loss in his right ear, arthritis, and eight herniated discs. R. 151.

At the ALJ hearing, Owens testified that he suffers from intense, daily pain that his medications somewhat diminish. R. 46. Most of Owens' pain is in the small of his back and shoulders. *Id.* But some days he'll also have pain in his arms and hands, which go numb and make it where he can't feel anything. *Id.*

Owens told the ALJ that he doesn't do "too much of anything . . . anymore." R. 47. But he does sometimes help his wife around the house by cleaning, running the vacuum cleaner, and cooking simple meals. R. 48.

### B.     Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step of determining Owens' residual functional capacity is the most important step here, as all of Owens' challenges flow from the ALJ's decision at this point.

### C.     Owens' Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Owens applied for disability insurance benefits and a period of disability in September 2018, claiming that he was unable to work because of various ailments, including high blood pressure, cerebral palsy, hearing loss in his right ear, arthritis, and eight herniated discs. After receiving an initial denial in December 2018, Owens requested a hearing, which the ALJ conducted in October 2019. The ALJ then issued an opinion denying Owens' claims in November 2019. R. 21–30.

At Step 1, the ALJ determined that Owens was not engaged in substantial gainful activity and thus his claims would progress to Step 2. R. 23.

At Step 2, the ALJ determined that Owens suffered from the following severe impairments: cerebral palsy, degenerative disc disease, and obesity. R. 23–24.

At Step 3, the ALJ found that none of Owens' impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. R. 24–25. Thus, the ALJ next had to determine Owens' residual functional capacity.

The ALJ determined that Owens had the residual functional capacity to perform light work with these added limitations:

- Owens cannot climb ladders, ropes, or scaffolds.

- Owens can occasionally climb ramps and stairs.

- Owens can frequently balance, kneel, stoop, crouch, and crawl.

- Owens needs to avoid concentrated exposure to temperature extremes and vibrations.

- Owens should avoid even moderate exposure to hazards, such as unprotected heights and dangerous moving machinery.

R. 25–29.

At Step 4, the ALJ found that Owens could perform his past relevant work as a Commander. R. 29. She then found that Owens had developed transferable skills of "record keeping" and "investigating," which meant that he could also perform the job of Police Clerk. R. 30. So the ALJ determined that Owens was not disabled under the Social Security Act. *Id.*

Owens requested an Appeals Council review of the ALJ's decision. R. 1–5. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record

contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

### III. Legal Analysis

Owens makes three arguments for why the ALJ erred in finding him not disabled. First, Owens argues the ALJ erred in not considering opinion evidence from his treating physician Dr. White. Second, Owens asserts the ALJ erred in not considering the findings from a functional capacity evaluation performed at Rehab Partners Physical Therapy of Anniston, LLC. Finally, Owens contends that the ALJ failed to adequately develop the record. The court agrees that the ALJ erred in not addressing the functional capacity evaluation or a note from Owens' doctor agreeing with its results and recommendations. So the court needn't address Owens' other arguments for reversal.

An ALJ must discuss in her hearing decision how persuasive she finds all the medical opinions in the record. *See* 20 CFR § 404.1520c(b). She must also specifically explain how she considered the factors of supportability and consistency

when determining the persuasiveness of a medical opinion. *See* 20 CFR § 404.1520c(b)(1).

The ALJ's hearing decision fails to address the opinions expressed in the September 5, 2019 functional capacity evaluation or an October 18, 2019 note from Owens' treating physician, Dr. Odeane Connor, agreeing with its findings. But the Commissioner argues that the ALJ didn't err in failing to discuss these opinions because the functional capacity evaluation occurred after Owens' date last insured. Before explaining why it disagrees with the Commissioner's argument, the court will discuss the functional capacity evaluation's findings.

1. <u>Functional capacity evaluation's findings</u>: On September 5, 2019, Owens was referred to Rehab Partners "for an assessment of his physical abilities and limitations relative to his current functional status." R. 476. An evaluator answered several questions about Owens' current work abilities and found that Owens' physical demand strength level was sedentary. *Id.* The evaluator recommended that Owens avoid tasks involving sustained sitting, standing, or walking; avoid ladder climbing or stair climbing; and avoid stooping, crouching, kneeling or crawling tasks. *Id.* About a month later, Dr. Connor, who began treating Owens in June 2019, wrote that she "agreed with the [evaluation's] results and recommendations." *Id.* Though Owens submitted the functional capacity evaluation and Dr. Owens' note to the ALJ, she didn't mention these medical records in her hearing decision.

7

2. <u>Evidence from after date last insured</u>: The Commissioner argues that the ALJ didn't have to consider the functional capacity evaluation or Dr. Connor's note even though the note counts as opinion evidence from one of Owens' treating physicians. According to the Commissioner, Dr. Connor's opinion and the functional capacity evaluation are irrelevant because Owens' date last insured was December 31, 2018 and the evaluation's findings stem from a September 2019 assessment of Owens' then-existing limitations.

To establish eligibility for disability insurance benefits, a claimant must show that he was disabled on or before his date last insured. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). So evidence that post-dates a claimant's date last insured is relevant only if it bears on the severity of his condition on or before the date last insured. *See Tredik v. Comm'r of Soc. Sec. Admin.*, 826 F. App'x 840, 845 (11th Cir. 2020). The weight given opinions drawn from evaluations completed after the date last insured "depends on the extent to which they [are] corroborated and . . . consistent with" medical evidence from the relevant period. *Id.*

According to the Commissioner, the functional capacity evaluation's findings don't bear on Owens' condition before the date last insured because: (1) the opinion doesn't purport to relate back to Owens' relevant period condition, (2) the opinion stemmed from a single post-relevant period examination, and (3) after his date last

insured but before the functional capacity assessment, Owens complained to one of his physicians about worsening issues.

The problem with this argument is that the ALJ didn't offer these explanations as reasons to discount Dr. Connor's opinion and the functional capacity evaluation. Instead, the ALJ failed to mention, much less consider, the functional capacity findings. And this court "cannot affirm based on a post hoc rationale that might have supported the ALJ's conclusion." *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (quotations and citations omitted); *see also id.* (rejecting argument that ALJ didn't need to discuss opinion rendered two years after last insured date because there was no specific medical evidence that claimant had mental limitations during period she was insured).

In addition, the court cannot say that the functional capacity assessment's findings have ***no bearing*** on Owens' condition before his date last insured without reweighing the evidence—something that this court cannot do. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). To be sure, the Commissioner points out that Owens complained of worsening mobilization and pain in June 2019. But the functional capacity evaluation's recommended limitations stem from Owens' cerebral palsy and degenerative disc disease, impairments that he suffered from while insured. So while the court could guess about whether the ALJ would find the limitations discussed in the functional capacity evaluation consistent

with Owens' medical records from the relevant period, the court finds remand the more appropriate outcome here. The ALJ (not this court) should make the first factual and legal findings about whether the medical records from the relevant period corroborate Dr. Connor's opinion that Owens had the limitations listed in the functional capacity assessment.

## IV.  Conclusion

In summary, the ALJ erred by not addressing Dr. Connor's note or the functional capacity evaluation's findings. So the court **REVERSES** the Commissioner's decision to deny benefits and **REMANDS** this case to the Commissioner. On remand, the ALJ should consider the functional capacity evaluation's recommendations and whether these recommended limitations align with the medical evidence from before Owens' date last insured.

The court will enter a separate final order that closes this case.

**DONE** on December 27, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE